IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

ASHLEY M. SMITH,                    )
                                    )
    Plaintiff,                      )
                                    )
v.                                  )    No. 18-1251-TMP
                                    )
ANDREW M. SAUL,                     )
COMMISSIONER OF SOCIAL              )
SECURITY,                           )
                                    )
    Defendant.                      )

---

**ORDER REVERSING THE DECISION OF THE COMMISSIONER AND
REMANDING CASE PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)**

---

Before the court is plaintiff Ashley M. Smith's appeal from a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1385. The parties have consented to the jurisdiction of the United States magistrate judge under 28 U.S.C. § 636(c). (ECF No. 12.) For the reasons below, the decision is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g).

## I. FINDINGS OF FACT

On August 11, 2015, Smith applied for supplemental security income under Title XVI of the Act. (R. 135.) Smith alleged disability beginning on August 4, 2015, due to asthma, depression, anxiety, chronic cystitis, bipolar disorder, and restless leg syndrome. (R. 159.) Smith's application was denied initially and

upon reconsideration by the Social Security Administration ("SSA"). (R. 40-79.) At Smith's request, a hearing was held before an Administrative Law Judge ("ALJ") on August 23, 2017. (R. 29.)

After considering the record and the testimony given at the hearing, the ALJ used the five-step analysis to conclude that Smith was not disabled from August 4, 2015, through the date of his decision. (R. 23.) At the first step, the ALJ found that Smith had not "engaged in substantial gainful activity since August 4, 2015[.]" (R. 17.) At the second step, the ALJ concluded that Smith suffers from the following severe impairments: asthma, affective mood disorder, and personality disorder. (R. 17.) At the third step, the ALJ concluded that Smith's impairments do not meet or medically equal, either alone or in the aggregate, one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 17.) Accordingly, the ALJ had to then determine whether Smith retained the residual functional capacity ("RFC") to perform past relevant work or could adjust to other work. The ALJ found that:

> [Smith] has the residual functional capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations: should avoid concentrated exposure to dusts, fumes, odors, gases, poor ventilation, and other pulmonary irritants; can understand and remember for simple and detailed tasks and can sustain concentration and persistence for the above tasks; cannot work with the public but can interact infrequently with supervisors and coworkers; and can set goals on a limited basis and adapt to infrequent change.

(R. 19.) The ALJ then found at step four that Smith was unable to perform any of her past relevant work. (R. 22.) However, at step five the ALJ found that considering Smith's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Smith can perform. (R. 22.) Accordingly, on October 2, 2017, the ALJ issued a decision denying Smith's request for benefits after finding that Smith was not under a disability because she retained the RFC to adjust to work that exists in significant numbers in the national economy. (R. 23.) On October 30, 2018, the SSA's Appeals Council denied Smith's request for review. (R. 1.) The ALJ's decision then became the final decision of the Commissioner. (R. 1.)

On December 21, 2018, Smith filed the instant action. Smith argues that: (1) the ALJ failed to comply with the treating source rule in evaluating the opinion of Dr. Sylvester Nwedo, Smith's psychiatrist; (2) the ALJ erred in not calling a vocational expert to testify at the hearing and instead relying on the medical-vocational guidelines established by SSA regulation at Step Five; and (3) the ALJ's decision on Smith's RFC is not supported by substantial evidence. Because reversal and remand is justified based on the ALJ's failure to comply with the treating source rule, the court only addresses Smith's first argument here.

## II. CONCLUSIONS OF LAW

**A. Standard of Review**

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Cardew v. Comm'r of Soc. Sec., 896 F.3d 742, 745 (6th Cir. 2018); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole

and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (citing Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). Rather, the Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990).

**B.   The Five-Step Analysis**

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). Additionally, section 423(d)(2) of the Act states that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Under the Act, the claimant bears the ultimate burden of establishing an entitlement to benefits. Oliver v. Comm'r of Soc. Sec., 415 F. App'x 681, 682 (6th Cir. 2011). The initial burden is on the claimant to prove she has a disability as defined by the Act. Siebert v. Comm'r of Soc. Sec., 105 F. App'x 744, 746 (6th Cir. 2004) (citing Walters, 127 F.3d at 529); see also Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir. 1990). If the claimant is able to do so, the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Born, 923 F.2d at 1173; see also Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 559 (6th Cir. 2014).

Entitlement to Social Security benefits is determined by a five-step sequential analysis set forth in the Social Security Regulations. See 20 C.F.R. §§ 404.1520 & 416.920. First, the claimant must not be engaged in substantial gainful activity. See 20 C.F.R. §§ 404.1520(b) & 416.920(b). Second, a finding must be made that the claimant suffers from a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii) & 416.920(a)(5)(ii). In the third step, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled. On the other hand, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the RFC to return to any past relevant work. See 20 C.F.R. §§ 404.1520(a)(4)(iv) & 404.1520(e). If the ALJ determines that the claimant can return to past relevant work, then a finding of not disabled must be entered. Id. But if the ALJ finds the claimant unable to perform past relevant work, then at the fifth step the ALJ must determine whether the claimant can perform other work existing in significant numbers in the national economy. See 20 C.F.R. §§

404.1520(a)(4)(v), 404.1520(g)(1), 416.960(c)(1)-(2). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. § 404.1520(a)(4).

**C. Treating Source Rule**

Smith argues that remand is appropriate because the ALJ failed to adequately explain his reasons for giving little weight to the opinion of Dr. Sylvester Nwedo, Smith's psychiatrist. Both parties and the ALJ agree Dr. Nwedo qualifies as a treating source. (R. 21; ECF Nos. 24 & 25.)

A treating source's opinion is due controlling weight if it is "well-supported by medically acceptable clinic and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 416.927(c)(2); Turk v. Comm'r of Soc. Sec., 647 F. App'x 638, 640 (6th Cir. 2016). If the ALJ discounts the weight normally given to a treating source opinion, he or she must explain his or her decision. 20 C.F.R. § 416.927(c)(2). "Where an ALJ does not give controlling weight to a treating source opinion, [he or she] weighs that opinion in light of the regulations, using the factors in 20 C.F.R. § 404.1527(c)(2)-(6)."[1] Perry v. Comm'r of Soc. Sec., 734

---

[1] The same factors can now be found at 20 C.F.R. § 416.927(c).

F. App'x 335, 339 (6th Cir. 2018). "This does not require an 'exhaustive, step-by-step analysis,' but merely 'good reasons' for the ALJ's weighing of the opinion." Id. (quoting Biestek v. Comm'r of Soc. Sec., 880 F.3d 778, 785 (6th Cir. 2017)). "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Dugan v. Comm'r of Soc. Sec., 742 F. App'x 897, 902-03 (6th Cir. 2018) (quoting Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 376 (6th Cir. 2013); see also SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996). The Sixth Circuit has explained that, in addition to facilitating meaningful review, this rule "'exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that her physician has deemed her disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'" Winn v. Comm'r of Soc. Sec., 615 F. App'x 315, 321 (6th Cir. 2015) (internal alterations omitted) (quoting Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004)). "Because of the significance of the notice requirement . . . a failure to follow the procedural requirement

of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence[.]" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 243 (6th Cir. 2007). This is true "even where the conclusion of the ALJ may be justified based upon the record." Id. Despite this, failure to give good reasons for discounting the opinion of a treating source may still be harmless error in three circumstances:

> (1) [if] a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527(d)(2)[2] — the provision of the procedural safeguard of reasons — even though she has not complied with the terms of the regulation.

Hernandez v. Comm'r of Soc. Sec., 644 F. App'x 468, 474 (6th Cir. 2016) (footnote added). This last circumstance occurs when an ALJ offers good reasons for rejecting a treating physician's opinion in some other part of the decision but fails to explicitly state those reasons are why the ALJ is discounting the treating source's opinion. Friend v. Comm'r of Soc. Sec., 375 F. App'x 543, 551 (6th Cir. 2010).

---

[2]The identical version of 20 C.F.R. § 1527(d)(2) applicable in SSI cases is 20 C.F.R. § 416.1927(c).

The ALJ's explanation of why he decided to give little weight to Dr. Nwedo's opinion, in its entirety, was that: "[t]he opinion is overly restrictive and not well[-]aligned with the medical evidence of record, which documents a less restrictive level of functioning." (R. 21.) This explanation does not constitute "specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record[.]" Minor v. Comm'r of Soc. Sec., 513 F. App'x 417, 437 (6th Cir. 2013). It also is not "an analysis of the factors to be considered in determining the weight accorded the opinions of [the claimant's] treating physician[]." Rogers, 486 F.3d at 245. The ALJ thus did not provide an adequate explanation for why he discounted Dr. Nwedo's opinion.[3]

The ALJ's error was not harmless. Turning to the first harmless error exception to the treating physician rule, Dr. Nwedo's opinion is not patently deficient. This is a low bar to clear; even an opinion with "numerous" shortcomings may still be less than patently deficient. Shields v. Comm'r of Soc. Sec., 732

---

[3]In his brief, the Commissioner argues that the record contains substantial evidence to support the ALJ's decision to give little weight to Dr. Nwedo's opinion. But failure to give good reasons explaining the weight given to a treating physician's opinion denotes a lack of substantial evidence "even where the conclusion of the ALJ may be justified based upon the record." Rogers, 486 F.3d at 243.

F. App'x 430, 440 (6th Cir. 2018). It is only in exceptional circumstances – when the record is entirely inconsistent with a treating physician's opinion, id., or when a treating physician's opinion is accompanied by no explanation, Hernandez v. Comm'r of Soc. Sec., 644 F. App'x 468, 474 (6th Cir. 2016), or appears to be half-finished, Gursky v. Colvin, No. 16-CV-2654-TMP, 2017 WL 6493149, at *4 (W.D. Tenn. Dec. 19, 2017) – that a treating source's opinion is patently deficient.

Dr. Nwedo evaluated Smith's ability to function in a work environment based on 40 areas of functioning and endorsed "extreme" limitations in 35 of those areas. (R. 1295-1298.) Dr. Nwedo explained that Smith had schizoaffective disorder of a depressive type, with resulting cognitive impairment and delusions. (R. 1296.) Summarizing Smith's treatment history, Dr. Nwedo noted that the symptoms of Smith's disorder were, though intermittent, both chronic and resistant to treatment. (R. 1297.) Smith's psychosis and depression, Dr. Nwedo explained, had proven intractable, seriously affecting her occupational and social functioning. (R. 1298.)

There is evidence in the record that is consistent with this opinion. Treatment records from Dr. Nwedo's facility[4] show that

---

[4]Many of the records from Dr. Nwedo's facility were prepared by

-12-

Smith suffered from homicidal and suicidal ideation throughout her treatment, as well as visual and auditory hallucinations. Smith's treatment history at Dr. Nwedo's facility began with a crisis intervention in October 2014 to prevent Smith from acting on her active suicidal ideation with a plan but no present intent. (R. 1041.) The next day, Smith was admitted to an inpatient psychiatric hospital where, at the time of admission, she was evaluated as having suicidal and homicidal ideations, triggered by an incident in which Smith perceived her supervisor to be harassing her at work. (R. 283-284.) Smith expressed a desire to harm her supervisor. (R. 284.) After about a week of inpatient care, Smith was released and began regular outpatient treatment at Dr. Nwedo's facility. (R. 284.) Early in Smith's treatment, Smith's therapist advised Smith she would be unable to cope with the stress of continued employment at Smith's previous work. (R. 907.) Smith continued to have suicidal and homicidal ideation in November 2014. (R. 910; 913.) In December 2014, Smith's mental state significantly improved and she denied homicidal and suicidal ideation. (R. 917; 920.) But in January 2015, Smith's mental state deteriorated and she reported visual hallucinations. (R. 925.) Though Smith denied

---

healthcare professionals other than Dr. Nwedo, particularly therapists.

homicidal and suicidal thoughts, Smith's therapist made Smith pledge to call a crisis line in the event of an emergency. (R. 925.) In February 2015, Smith reported homicidal and suicidal ideation "as strong as they ever have been but on and off." (928; 931.) This continued with varying degrees of severity in March (R. 934; 937; 943), April (R. 952), May (R. 964; 970), June (R. 976; 982), July (R. 988; 991; 994; 997; 1000), August (R. 1006; 1009; 1012.), September (R. 1104; 1121), October (R. 1127; 1130), and December 2015 (R. 1502), as well as in 2016 in February (R. 1517), March (R. 1520), April (R. 1523; 1526), June (R. 1530), October (R. 1546), November (R. 1550), and December (R. 1558). In March 2017, Smith reported "severe homicidal thoughts" (R. 1570), which continued in April 2017 (R. 1574). In addition, Smith reported auditory and visual hallucinations at various times throughout this period. (R. 925; 949; 952; 1410; 1420; 1490; 1523; 1525.) The available treatment records from Dr. Nwedo's facility end in June 2017. (R. 1376.) Based on this record, the court concludes Dr. Nwedo's assessment that Smith had extreme limitations in her ability to function in most work-related areas because of intractable symptoms associated with schizoaffective disorder is not patently deficient. The ALJ's error does not fall within the first harmless error exception to the treating physician rule.

The second harmless error exception to the treating physician rule does not apply because the ALJ did not adopt Dr. Nwedo's opinion.

The third harmless error exception to the treating physician rule also does not apply. The third exception covers circumstances when the ALJ provides good reasons for rejecting the opinion of a treating physician elsewhere in the opinion but does not specifically articulate those reasons as the basis for discounting the treating physician's opinion. Friend, 375 F. App'x at 551. This exception does not apply here for three reasons.

First, there is nothing in the opinion that suggests the ALJ considered the factors the SSA requires ALJs to consider after deciding that a treating source is not entitled to controlling weight. See Rogers, 486 F.3d at 245 (reversing and remanding because ALJ "failed to provide an analysis of the factors to be considered in determining the weight accorded the opinions of [the claimant's] treating physicians"); see also Minor v. Comm'r of Soc. Sec., 513 F. App'x at 437-38.

Second, the ALJ's discussion of Smith's treatment history contains significant factual errors that suggest the ALJ misunderstood the evidence in the record. Cf. Friend, 375 F. App'x at 552-553 (ALJ's misinterpretation of medical test justified

remand); Winn, 615 F. App'x at 323 (ALJ's misinterpretation of treatment notes justified remand). The ALJ characterized Smith's treatment at Dr. Nwedo's facility as follows:

> The claimant has received treatment for her mental health problems at [Dr. Nwedo's facility] since approximately October 2014. While the claimant has received consistent treatment throughout the period at issue for her major depressive disorder, treatment notes indicate relative stability with treatment. For example, October 2014 and August 2015 treatment notes (among others) note that the claimant reported no side effects from her medications, no new complaints, and only requested refills. In June 2015, the claimant reported that her symptoms had greatly improved with a new medication. She reported attending [B]ible study every night and no longer having any homicidal ideation.
>
> In September 2015, the claimant reported that she was continuing do [sic] improve. She stated that she had applied for a job at the library part time and that she had been staying by herself and doing things like cleaning the house and taking out the garbage.

(R. 21) (citations omitted). There are a number of factual errors here. First, while the ALJ states that Smith's "October 2014" treatment records "note that the claimant reported no side effects from her medications, no new complaints, and only requested refills," the only treatment at Dr. Nwedo's facility that Smith received in October 2014 was crisis intervention before being admitted to an inpatient psychiatric facility. (R. 1041.) The statement Smith's "August 2015" treatment records "note that the claimant reported no side effects from her medications, no new

complaints, and only requested refills" is also incorrect; Smith complained in August 2015 that her medication was not working. (R. 1006.) The statement Smith had no side effects from her medication is also inconsistent with the record — Dr. Nwedo assessed that Smith's medications caused her to suffer "sedation, weight gain, insomnia, agitation, nausea, anxiety, [and] vomiting." (R. 1297.) The statement that Smith was receiving treatment for major depressive disorder throughout this period is also without a record basis; Smith was receiving treatment for schizoaffective disorder, a broader condition. The ALJ's assessment of Smith's treatment records from June 2015 is similarly flawed. The record the parties agree the ALJ was referring to is from September, not June, said Smith had decreased homicidal ideation, not "no" homicidal ideation, and said Smith was attending weekly Bible study, not daily Bible study. (R. 1104.) These factual errors create the impression that Smith's condition was better than the treatment records reflect. Beyond the factual errors, the ALJ's description of Smith's treatment records entirely omits Smith's 2016 and 2017 treatment history. The relevant period in this case runs from August 4, 2015, to the date of the ALJ's decision on October 2, 2017. Yet the ALJ's summary of the treatment records ends in September 2015. As discussed above, there is a large amount of

relevant information from that period, showing Smith struggling with serious symptoms associated with her mental impairments. The court cannot conclude the ALJ's discussion of the record compensates for the lack of good reasons given for rejecting Dr. Nwedo's opinion when it ignores or misinterprets so much of the evidence supporting Dr. Nwedo's conclusion.

Third, and finally, the ALJ appears to have assumed Smith's ability to engage in certain social activities such as Bible study or volunteering at her church showed Smith was capable of handling the stress of a work environment. Social activities are fundamentally different from work activities, and it is an error for an ALJ to equate the capacity to do one with the capacity to do the other. Winn, 615 F. App'x at 323; Cole v. Astrue, 661 F.3d 931, 939 (6th Cir. 2011). Work is stressful in ways that social activities simply are not, particularly in supportive environments such as churches. See SSR 85-15, 1985 WL 56857 at *4. Though the ALJ put great emphasis in his opinion on Smith's capacity to engage in social activities and other activities of daily life, the ALJ did not acknowledge the distinction between the stresses involved in those activities and work. The ALJ's error does not fall within the third harmless error exception to the treating source rule.

The "ALJ's failure to follow agency rules and regulations 'denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" Cole, 661 F.3d at 937 (quoting Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 407 (6th Cir. 2009)). Accordingly, it is ordered that Smith's application for disability benefits be remanded for the ALJ to properly evaluate and give appropriate weight to the opinion of Dr. Nwedo or explicitly identify good reasons for discounting that opinion. See Sawdy v. Comm'r of Soc. Sec., 436 F. App'x 551, 553 (6th Cir. 2011) (stating that "when an ALJ violates the treating-source rule, '[w]e do not hesitate to remand,' and 'we will continue remanding when we encounter opinions from ALJ[s] that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion'") (quoting Hensley v. Astrue, 573 F.3d 263, 267 (6th Cir. 2009)). Because the court finds reversal is warranted based on Smiths' first argument, it does not reach the other arguments raised in her brief, including her argument that the ALJ erred in not using a vocational expert. However, on remand, the ALJ may revisit the utilization of a vocational expert.

### III. CONCLUSION

For the reasons above, the Commissioner's decision is

reversed and remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

    s/ Tu M. Pham
    TU M. PHAM
    United States Magistrate Judge

    January 17, 2020
    Date